BELL, administrator, *vs.* WINDSOR, administrator.*

1. The law controlling this case was decided in the case of *Windsor et al. vs. Bell, executor*, 61 *Ga.* 671, there being nothing in the pleadings or evidence on the second trial to change the legal rights of the parties.
2. The only issue left to be tried after that decision was the amount found by the auditor to be due the plaintiff.
3. This issue was to be determined on the trial of the exceptions filed to the auditor's report, and that trial was upon the 2nd, 4th and 6th exceptions.
4. The court did not err in sustaining the demurrer to all the exceptions except those named, nor in his charge to the jury upon the issues made by said exceptions, nor in denying the motion for a new trial, which will be understood from the report of the case.
5. The charge of the court to the jury, that the issues of fact and law found by the auditor " are correct unless they are shown to be in-

*BLECKLEY, C. J., being disqualified, Judge Richard H. Clark, of the Stone Mountain circuit, was appointed to preside in his stead.

v 79 13

correct; otherwise the presumption remains," includes the intrinsic evidence upon which the report was made, as well as the new evidence on the trial, in the absence of a special request to charge and request refused.

Judgment affirmed.    (Head-notes by the court.)

July 5, 1887.

CLARK, Judge.

[This case was formerly before the Supreme Court, and will be found reported in 61 *Ga.* 671.    After its return to the superior court, it was referred to an auditor, who made the following report:

" Sampson Bell, duly qualified executor of the last will of E. B. Sweeney, made returns to the ordinary of said county of his actings and doings as said executor.

" His first return was made June 7th, 1858 (and in this report all returns are considered as of July 1st).   Acccording to this return, he received the sum of $10,840.89.   He paid out the sum of $5,798.87.  His commissions on receipts amount to $271.24; on paying out, to $144.97.   His credits aggregate $6,215.08; leaving him indebted to the estate, July 1st, 1858, the sum of $4,634.81.   I find in this return the following mistakes in addition, omission and calculation: The addition of the amounts paid, as made in the return, gives one dollar too much.   There is an omission to charge the estate with one dollar and ninety-three cents, paid to G. N. Hay, according to voucher, and there is an error of three dollars and ninety-seven cents in the commission for paying out.   Making these corrections, this return stands as above set forth.

" His next return was made July 5th, 1859.   According to this return, he received twenty dollars, adding this much to the principal. He paid out $257.83.   His commissions on receiving amount to fifty cents; on paying out, to $6.44, making his aggregate credits for this return $264.77.   I find in this report a mistake of two dollars and seventy cents.   This is in charging the estate five dollars and forty cents on the voucher of Atkins & Reese, when it should have been two dollars and seventy cents.   I have also added the commissions in this return and all others where they are not charged.

"His next return dated July 2d, 1860.   According to this return, he paid out $335.88.   His commissions on this sum amount to $8.39, making his credits for this return $344.29.   There is a mistake of fifty cents in this return.   He has charged the estate with five dollars paid Kate King, when the charge should have been five dollars and fifty cents.

" His next return is dated June 3d, 1861.   According to this return,

he paid out $195.95.  His commission on this amounts to $4.89, making his aggregate credits for this return $200.84.

" His next return is dated June 1st, 1862.   According to this return, he paid out $138.69.   His commissions on this amount to $3 46, making his aggregate credits for this return $142.13.

" His next return is dated June 25th, 1863.   According to this return, he paid out $235.99.   His commissions on this amount to $5.89, making his aggregate credits for this return $241.88.

" His next return is dated July 4th, 1864.   According to this return, he paid out $921.15.   His commissions on this amount to $23.03, making his aggregate credits for this return $944.18.

"His next return is dated July 2nd, 1866.   According to this return, he paid out $2,291.82.   His commissions on this amount to $57.29, making his credits for this return $2,349.11.

"His next return is dated May 14, 1868.   According to this return, he paid out $246.68.   His commissions on this amount to $6.16, making his aggregate credits for this return $252.84.

"This was his last return.   At no time after the return of 1858 did the payments amount to as much in any year as the interest for that year, with the interest due from the preceding year or years, until the payments returned in 1864.

"Calculating the interest on the $4,634.81 from July 1st, 1858, to July 1st, 1859, one year, and the principal, $4,654.81, from July the first, 1859, to July 1st, 1864, five years, will make the sum of $1,953.58.  This with the last mentioned principal amounts to $6,608.39.   The credits up to and including returns of 1864, as specified above, amount to $2,137.37, leaving due the estate July 1st, 1864, $4,471.02.

"The interest on the last mentioned sum, from July 1st, 1864, to July 1st, 1866, two years, amounts to $625.94, which with the principal amounts to $5,096.96.   Deduct amount of credits of return of 1866, $2,349.11, leaves due the estate, July 1st, 1866, $2,747.85.   The interest on this from July 1st, 1866, to July 1st, 1868, two years, amounts to $384.66, making the sum of $3,132.51.   Deduct from this the amount of credits of return of 1868, $252.84, leaves due the estate, July 1st, 1868, $2,879.67.

"Below, a statement of account will show the same result:

*Sampson Bell, executor, in account with estate of E. B. Sweeney, Dr.*

| | | |
|---|---|---:|
| 1858. | To amount received as per return............................ | $10,849 89 |
| | Credited by amount paid out and commissions......... | 6,215 08 |
| | Due estate July 1st, 1858...................................... | 4,634 81 |
| 1859. | Debtor to amount received..................................... | 20 08 |
| | Principal after July 1st, 1859................. ............... | 4,654 81 |
| | July 1st.   To one year's interest on $4,634.81.......... | 324 43 |
| 1864. | July 1st.   To five years' interest on $4,654.81. ........ | 1,629 15 |
| | | $6,608 39 |

Bell, administrator, *vs.* Windsor, administrator.

CREDIT.

| | | | | |
|---|---|---|---|---|
| 1859. | Amount paid out and commissions..........$264 77 | | | |
| 1860. | " " ......... 344 27 | | | |
| 1861. | " " ......... 200 84 | | | |
| 1862. | " " ......... 142 13 | | | |
| 1863. | " " ......... 241 18 | | | |
| 1864. | " " ......... 944 18—$2,137 37 | | | |

|  |  |
|---|---|
| Due estate July 1st, 1864.................................... | $4,471 02 |
| 1866. To two years' interest on $4,471.02...................... | 625 94 |
| | $5,096 96 |

CREDIT.

|  |  |
|---|---|
| By amount paid out and commissions............ ..... | $2,349 11 |

|  |  |
|---|---|
| Due estate July 1st, 1866.................................... | $2,747 85 |
| 1868. Debtor to two years' interest on $2,747.85............. | 384 66 |
| | $3,132 51 |

CREDIT.

|  |  |
|---|---|
| By amount paid out and commissions................. | $ 252 84 |

|  |  |
|---|---|
| Due estate July 1st, 1868.................................... | $2,879 67 |

"The above gives the result of the returns made by the executor, and gives him credit for each entry made by him, and in cases where he had not charged his commissions I have given him credit for them.

"Counsel for the defendant insisted that the $1,000 charged by the executor against himself as having been received from James W. Bell was a mistake, and that that amount should be deducted from the amount charged by the executor against himself. The evidence offered for that purpose does not satisfy me that this should be done. The defendant in this case undoubtedly believes that both the notes given by him to Mr. Sweeney for the land were traded to Sampson Bell, but he could not give the details of the transaction, and did not witness the settlement between Mr. Sweeney and his father, and I do not think the solemn admission made by Sampson Bell against himself should be set aside.

"Counsel for defendant insisted that there was proof of ratification by Mrs. Windsor of the settlement made by Mr. Windsor with Sampson Bell. The only proof of actual ratification was in the testimony of Mr. and Mrs. A. C. Bell. What Mrs. Windsor said to them was said before she arrived at majority, and in ignorance of the rights which she had under the will of her father, and is not such proof of ratification as the law requires, in my judgment. The fact that she has received some benefit from the land, the title deeds to which were turned over to Mr. Windsor at the time of the settlement, and

that she still holds the lands not sold, was also urged as an argument that she has ratified the settlement. If in this settlement Mr. Bell had made deeds to lands which belonged to him, Bell, and she had received benefit from lands so acquired from Bell, and still held the title to such lands, and did not tender them back, the argument would have force, but that she received the evidence of title to land which was hers, and that she still retains the mere evidences of her title, does not, to my mind, show that she has ratified the settlement.

"I therefore conclude from the evidence, in view of the fact that the property was devised to Mrs. Windsor, 'free from the disposition of any husband she may ever have, not to be subject to contracts, debts or liabilities of any husband she may have,' that the plaintiff, Mrs. Josephine F. Windsor, is entitled to recover in this case, from the defendant, James W. Bell, executor of the last will and testament of Sampson Bell, the amount that is shown to be due by the returns as above set forth, to-wit, twenty-eight hundred and seventy-nine dollars and sixty-seven cents, with interest from the first day of July, 1868, and I so report.

"Counsel for the plaintiffs insisted that the executor could only expend the interest on the principal for the benefit of the devisee, but the will charged the executor with the care and education of Mrs. Windsor, and gave the executor full power to act at his discretion, and I think that the law forbidding guardians to expend more than the interest does not apply in this case, and that the basis of calculation as set forth above is the proper basis."

To this report the defendant filed the following exceptions:

1st. The auditor erred in calculating interest against the executor from the first of July, 1858; it appearing from the evidence that part of the property only was sold for cash, and the remainder on twelve months' time, and that the funds coming into his hands had not been in hand twelve months prior to July 1st, 1858.

2nd. The auditor erred in charging against the executor the one thousand dollars returned as note on James W Bell, it appearing from the evidence that said note was the individual property of said executor, and not the property of Sweeney, deceased. The finding of the auditor as to the said one thousand dollars is against the evidence and without evidence to support it.

3rd. The auditor erred in his finding that James W. Bell, executor of Sampson Bell, was indebted to plaintiffs in

said case the amount of $2,879.69, with interest from the first day of July, 1868, when the record (which was not attacked) and the evidence show that he is not indebted in said sum, but a much smaller sum than that reported.

4th. The auditor erred in holding that Mrs. Windsor was not bound by the settlement made with Sampson Bell in 1868 by R. S. Windsor, her husband, of all and every matter due and owing her on account of his connection with said case, as executor of the last will and testament of Sweeney, deceased, and in repudiating the evidence submitted on that issue; it appearing by the evidence that the settlement made by R. S. Windsor, with Bell, executor, was made as her agent, and with express authority to make it, and the terms were all known by her and made by her direction and command.

5th. The auditor committed gross error in not passing upon the great question as to whether the settlement was made by her assent, but concluded by summing up and finding that there was no ratification, notwithstanding the evidence on said proposition, because she was held to be a minor and ignorant of her rights under the will of Sweeney, while the evidence was pointedly to the effect that she stated to A. C. Bel. what the terms of the settlement were to be, before it was made, which terms were identical with the settlement thereafter made by her husband with Bell, executor, and that the rights of the complainant were fully and amply settled by the will of Sweeney; and the finding of the auditor against the defendant tends to show the culmination of a great fraud upon the part of R. S. Windsor, in conjunction with his wife, in obtaining the settlement in 1868 and the money of S. Bell, to repudiate the same and re-collect the debts and liabilities and the trust assumed by him as executor.

6th. The auditor erred in holding that the complainant was not barred by acquiescence and ratification and the statute of limitations; it appearing in evidence that she received the property under the settlement with full

knowledge on her part of its contents, its terms and amounts, and has held the same and waited and acquiesced more than ten years after the cause of action arose before bringing this suit.

7th. The auditor erred in charging and allowing interest on funds in the hands of the executor, on and by his returns from December 1st, 1861, to 25th July, 1868, or during the late war between the States.

8th. The auditor erred in his finding that the complainant was not bound by the act of 1869 relative to limitation of actions in this State.

9th. The report of the auditor is contrary to the evidence, and without evidence to support it, and should have been a finding in favor of the defendant.

In October, 1884, the plaintiff demurred to these exceptions, and all were stricken except the 2nd, 4th and 6th, which were submitted to the jury, who found against them in favor of the report. The defendant moved for a new trial on the following grounds:

(1)–(2) The verdict was contrary to law and evidence.

(3) The court erred in sustaining the demurrer to the exceptions stricken.

(4) The court erred in charging as follows:

(*a*) " This case was pending in this court when it was, upon a proper order of the court, referred to an auditor. When cases involve complicated matters of account, under our law, it is the duty of the court to refer them to an auditor, where he can, at his leisure, pass upon them, and simplify the duties of the jury that may have to pass upon any issue that arises, save expense, and arrive at the true condition of the account with more care and less expense than a jury could ordinarily do. This case took that direction. It was referred to Mr. N. A. Smith as auditor, and he, after hearing the case, has made this report. When that report is turned into court, it is not made the judgment of the court, because the executors of Bell come into court and say that the report ought not to be made the

judgment of the court, by reason of several exceptions which they file—three exceptions. Well, upon the filing of these exceptions, the court submits to you whether these exceptions should be sustained, or whether they should be overruled. You have not been selected to try the state of the account between the estate of Bell and the estate of Mrs. Windsor, who, subsequent to the bringing of the suit, died, and the suit is now proceeding in the name of the administrator. You are simply to try these three issues, and render a special verdict upon them. You are not to determine how much, if anything, the estate of Bell is indebted to the estate of Mrs. Windsor. That is not the issue. That is not the question. You are simply to determine whether or not these three exceptions filed to the report of the auditor are to be sustained, or whether either one is to be sustained. The report of the auditor comes into court with the presumption in favor of its truth, and if there was nothing else offered to overcome it, the law would permit that presumption to ripen into a judgment. The auditor not only finds the state of the account, but he undertakes to pass upon the issues of fact and law that are brought before him, and his findings upon these questions are what the lawyers call *prima facie* correct; that is, they are correct unless they are shown to be incorrect; otherwise, the presumption remains."

(*b*) "The first exception which you will pass upon is this: The executors of Bell except to the auditor's report because they say, ' that the auditor erred in charging against the executor the one thousand dollars returned as note on James W. Bell, it appearing from the evidence that said note was the individual property of said executor, and not the property of Sweeney, deceased; the finding of the auditor as to said one thousand dollars is against the evidence, and without evidence to support it.' That exception means that in the account allowed by the auditor he has charged the estate with a note for $1,000 on James

W. Bell, the defendant. The executors of Bell contend that that note did not belong to the estate of Sweeney, or to Mrs. Windsor, but that it belonged to Sampson Bell, and was an improper charge against Sampson Bell, and they undertake to show that that is true by evidence. You look to the evidence and see what the truth of the case is. If, under the rules of evidence, it should appear that this note was not the property of Sweeney, but was the property of Sampson Bell, then that would be an improper charge against the estate of Sampson Bell, and the exception ought to be sustained; but you are to ascertain this fact under the rules of evidence, and if it should appear to you from the testimony that Sampson Bell, as executor of Sweeney, made returns to the court of ordinary wherein he charged himself in his return with this note, that that return was made in the court of ordinary a considerable time before the alleged settlement of the estate and not corrected in that court, then I charge you that Sampson Bell and his executors would be estopped from denying that it was the property of Sweeney. That is to say, if it should appear to you from the evidence that Sampson Bell charged himself, as executor, with this note in his return as the property of Sweeney, the policy of the law would not permit him to testify that it was his note or set up that it was his note. He would be concluded; he would not be heard to say, under the rules of law, that it was not the property of Sweeney. If you find the facts of the case to be as just stated, then you will say, ' We, the jury, find against this exception,' because that exception is intended to say that the $1,000 note is the property of Sampson Bell and not the property of Sweeney. So you will say, if you think that the proposition just stated has been established, ' We, the jury, find against this exception.' But if you find that such is not the evidence, but the truth of the case is that it was the property of Bell, and not the property of Sweeney, and that Bell was not concluded in the manner

that I have just spoken of, you will say, 'We, the jury, find in favor of this exception.'"

(*c*) "This exception means that the executors of Bell seek to set aside so much of the auditor's report as repudiates the alleged settlement by Windsor and Sampson Bell. They insist, upon the part of the executor, that the truth of the case was, that Sampson Bell, while in life, in 1868, had a settlement with R. S. Windsor; that Windsor was acting as agent for his wife; that he had full and complete authority from her to make the settlement; that it was made by her consent and direction. The auditor found the contrary to be true. He found that the settlement did not bind Mrs Windsor, that it was not made by Windsor as her agent, and that she did not authorize it to be made, and that therefore she was not bound by it. The defendants, the executors of Bell, say that that finding was wrong, in that the truth is just as I have stated it in this exception. So that you will pass upon this question and see whether or not the auditor was wrong in his finding. I will give you some principles of law to assist you in your investigations of the subject. If it should appear to you from the testimony that R. S. Windsor, in 1868, undertook, or did make, a settlement with Sampson Bell, before you would be authorized to sustain this exception, it should appear that Windsor acted as agent of his wife, that he had full and complete authority to so act, and that she was of full age, and competent to authorize him to act for her. For the court charges you the law to be that a minor could not lawfully make a settlement with an executor of an estate in which she had an interest, nor could she authorize lawfully an agent to do so for her. So that if it should appear that Mrs. Windsor was a minor, and that she authorized R. S. Windsor to make a settlement for her, and that she did so during her minority, then, I charge you, she would not be bound by such a settlement, but that such a settlement would be unauthorized by law;

and if the facts show that this was such a settlement, you should find against this exception."

(*d*) "Of course, you will look to the evidence recorded in the case ; the testimony that is there you have a right to consider, and render a verdict in accordance with the testimony, applying the principles of law that the court has given you in charge. If it should appear to you that R. S. Windsor, in 1868, undertook to make a settlement, or did make a settlement, with Sampson Bell, not as agent of his wife, but in the right of his wife and for himself; if it should appear to you that, believing or assuming that he was the legal owner of the property and rights of his wife in question, by virtue of his marriage, he undertook to make a settlement, or did make one, I charge you that it would not bind Mrs. Windsor ; that it would not be such a settlement as would conclude her, because it appears to you from the evidence that he married since 1866. Whatever property his wife had at the time of the marriage, or had acquired since, would be hers and not his. He would have no marital rights that would authorize him, without her authority and consent, to settle any rights that she had with the estate of Sweeney or Bell, or to sell any property belonging to her. Look to the evidence, and see what the truth is on this subject, and find a verdict in accordance with the truth. If you should think that, under the facts in the case, and under the law as given you in charge by the court, this exception has been sustained, you will say, 'We, the jury, find in favor of this exception.' "

(*e*) " The auditor found in his report that there was no ratification upon the part of Mrs. Windsor ; that she did not ratify the settlement, and that the statute of limitations did not conclude her upon this subject. The executors of Bell say that is where the auditor committed another error. They excepted upon that ground, and say that he should have found that she had ratified the act, and that she was barred by the statute of limitations. I will give you principles of law applicable to that subject. If you

should believe from the evidence that Windsor undertook to act for Mrs. Windsor, as her agent, but was not authorized to do so; that he made a settlement with Sampson Bell: if you believe that she, after coming of age, was fully informed of the terms of the settlement, and of her legal rights in the premises, and after full knowledge, both of the terms and the nature of the settlement, and of her legal rights in the premises, she acquiesced in the settlement, or agreed to the settlement, or by words or acts, either expressly or impliedly, ratified the settlement, then she would be concluded by it.    Now, what constitutes ratification is a question of fact for the jury; the presumption in all cases of this kind being that the report of the auditor is true, and it being upon the exceptors to overcome that presumption by satisfactory proof.    If you should believe from the evidence that Mrs. Windsor did not know of the terms of this settlement made by Windsor, as her agent, or did not know of her legal rights in the premises, and yet she acquiesced, impliedly or expressly, by acts or words, or otherwise, then I charge you that that would not be such a ratification as the law would require to make legal the act of the agent.    Now, look to the evidence, and see whether or not he acted as her agent; whether, if he did, he had authority; whether, if he did not have authority, she ratified the act in the manner that the court charges you that the law requires or authorizes. If you should believe from the evidence that Mrs. Windsor was not of age; that she was not 21 years old; that she could not therefore appoint a lawful agent to settle for her; but if you should believe from the evidence that she did undertake to appoint a lawful agent, notwithstanding her disability; that that agent acted for her, and, so acting, received, in her behalf, money or property which was due her; that he fully advised her of the terms and circumstances, and apprised her of her legal rights, and that yet, after arriving at age, at her majority, she retained the proceeds of the settlement, then that

would be such an acquiescence in its terms as would conclude her from saying that the settlement was unauthorized, and that it was done while she was under disability. You look to the evidence, and see how it is upon that subject. If you believe that the evidence establishes this, then you will find in favor of the exception; but if you believe that she did not authorize the agency of Windsor, or that Windsor did not undertake to act as her agent, or that she did not ratify his acts, if he did not act as agent, or that if she received anything from Sampson Bell, it was only the titles to property which the law had already cast upon her, then you will find against the exception."

(*f*) "After you have found a special verdict, if you find against these exceptions, you will say, 'We, the jury, find in favor of the auditor's report.' If you should find in favor of these exceptions, you will say, 'We, the jury, find against the auditor's report.' You see that you find four verdicts : one on each exception, and then a general verdict after you have passed on the exceptions, either sustaining or setting aside the report of the auditor."

The jury having been brought back into the court-room, the court erred in the following charge :

(*g*) "The auditor, in his report, found and reported that Mrs. Windsor was not bound by the settlement made by R. S. Windsor with Sampson Bell; that that settlement was not made by her authority, or with her direction or consent, but that the settlement, when made, was the individual act of Windsor, and if attempted to be made as her agent, that he had no authority to make the settlement. That is what the auditor found. Substantially, that is presumed to be correct, and the party filing these exceptions, that is, the executors of Bell, when they file the exceptions, they take the burden of showing that it is not correct. The auditor's report is presumed to be correct, and that presumption will continue unless the executors of Bell overcome that presumption. They seek to do this by this exception. It is necessary to give you some

principles of law in charge, that you may understand whether they have satisfactorily sustained this exception. If you believe from the evidence that R. S. Windsor undertook to make a settlement on his own behalf, that is, in right of his wife, upon the theory that the property belonged to him as her husband, I charge you that that settlement would not bind Mrs. Windsor. Since the year 1866, the property of a woman at the time of her marriage that she is possessed of and whatever she may subsequently acquire, belongs to her, and not to her husband, and it would not be competent for the husband to make a settlement that would bind the wife without her consent. If you should believe from the evidence that Windsor undertook to make a settlement with Bell as the agent of Mrs. Windsor, then you will necessarily inquire what was the age of Mrs. Windsor at the time of the alleged settlement. You will necessarily inquire whether he was her agent; whether she had authorized him to act for her. If you should conclude that she had authorized him to act as her agent; that she had so consented and directed, you will inquire what was her age at that time. If, in 1868 (the exact date you will find from the papers), Mrs. Windsor was not 21 years old, that is, if she had not attained her majority, she could not have made a lawful settlement herself; because, being a minor, although married, she would labor under a legal disability to make a settlement with the executors of her father's estate. Such a settlement, without more, would not be binding upon her. It follows, therefore, logically and necessarily, that if she could not make a settlement for herself, that she could not authorize anybody else to do so for her as her agent. Therefore if you believe that she was a minor, and appointed Windsor to go forward and make a settlement for her, I charge you that such a settlement by Windsor would not bind her in law, but would be an illegal act; would be such a settlement as she could repudiate—would not be bound by. If you should believe that she was a minor,

and authorized Windsor to act for her, or undertook to authorize him, that would be an illegal settlement; that is to say, it would be such a settlement as she could repudiate when she became of age, and the settlement would not bar her right of recovery, unless, after becoming of age, she ratified his act.   Now, when you come to consider what constitutes ratification, it is necessary for you to consider certain principles of law applicable to the law upon that subject.

"The act of an unauthorized agent might be ratified, and if ratified, it would relate back to the original act and make it legal.   But before a ratification of that kind would take place, it is necessary that the principal should know the act done, and know her legal rights in the premises; that is to say, if you believe that Windsor was acting as agent of his wife, and that she was a minor at the time, she would not, as a general proposition, be bound by it.   In order to make her bound by ratification, it should appear that after her majority she knew what she was entitled to receive from that estate; that she knew that this settlement, if any settlement was made, was not binding upon her; that she was in possession of her full legal rights, and by acts, or words, or retention of the property, rendered it legal.

"If it should appear to you from the evidence that Windsor received in settlement a consideration—money or other things of value,—and that he gave that consideration to his wife, and that she retained possession of it after she became of age, knowing that she was not bound so to do, in full possession of all knowledge requisite to the understanding of her legal rights, that would be ratification, if you were satisfied that these circumstances amounted in law to a ratification, for that is a question to you.   But this principle would not apply to any property, such as lands, that might be turned over to her as a portion of her father's estate.   If a person dies possessed of lands, the law casts the title upon the heirs at law, and if in this set-

tlement the property received consisted in the turning over of lands that were the property of Mrs. Windsor to her, and she retained these, that would not be a proper matter to consider upon the subject of ratification; but if she received so many dollars and cents, or other property, and she got the money or other property, and retained and kept it, then you might consider that upon the subject of ratification, under the rules already given you on that subject. The question of ratification is a question for you— a question for your consideration under the testimony. You have no other guide by which you are to be controlled, except the testimony in the case. That you have from the stand, and from the evidence in the record which is before you. You are to try this case strictly by that, and find the truth without any regard to who may be the parties interested in the case, or what may be the consequences of your verdict. What the truth is, is all that you seek; who are the parties to the case, it is entirely unnecessary to consider, except insofar as it may illustrate the truth in the case; and you are to try the case solely upon the testimony submitted and the law that the court gives you in charge."

(5) The court erred in charging the jury that they might look to all the evidence in the record and that it was true, unless the defendant had overcome it, without telling them that the *prima facie* truth of the report only applied to the facts found by the auditor, and not to the arguments and conclusions of law of the auditor.

(6) The court erred in instructing the jury that if they found against all the exceptions, then they should find a general verdict in favor of the report.

(7) The court erred in refusing to charge, as requested by the defendant, as follows: "The court is requested to charge the jury that it was competent for Mrs. Windsor to appoint her husband agent, general or special, and he could act as any other agent, and if she authorized and directed him, as her agent, to make the settlement in 1868,

as. set out in the receipt, and received from her husband the money and property mentioned therein, and kept the same up to now, the settlement being fair and without fraud, then she would be bound by such settlement, and if, after she arrived at age, she retained the money received, through her agent, and up to this time, this would amount to ratification of the whole settlement, and she .will be bound by it; the law being that if an infant receives property, money or other valuable consideration, and, after arrival at age, retains possession of such property, or enjoys the proceeds of such valuable consideration, such a ratification of the contract will bind her. It is not .competent for her to ratify the act of her agent in part and repudiate it in part, but a ratification in part, under the law, ratifies the whole."

The motion was overruled, and the defendant excepted.]